# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION - DETROIT

**In Re:**

Calvin1, LLC

Chapter 11 (subch. V)
Case No. 25-44852
Hon. Mark A. Randon

Debtor-In-Possession,

_____/

### COVER SHEET FOR MOTION FOR USE OF CASH COLLATERAL, REGARDING ADEQUATE PROTECTION AND RELATED RELIEF

The debtor has filed the above-captioned motion, which is attached to this Cover Sheet. In accordance with LBR 4001-2(b) (E.D.M.), the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| **(1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code.** | _____ Yes __X__ No | Page _____, ¶ _____ |
| **(2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral.** | _____ Yes __X__ No | Page _____, ¶ _____ |
| **(3) Provisions that establish a procedure or conditions for relief from the automatic stay.** | _____ Yes __X__ No | Page _____, ¶ _____ |
| **(4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor.** | __X__ Yes _____ No | Page __1__, ¶ _4_ |
| **(5) Provisions that prime any lien without that lienholder's consent.** | _____ Yes __X__ No | Page _____, ¶ _____ |
| **(6) Provisions that relate to a sale of substantially all of the debtor's assets.** | _____ Yes __X__ No | Page _____, ¶ _____ |

1

| | | |
|---|---|---|
| **(7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments.** | \_\_\_\_\_ Yes<br>\_\_X\_\_\_ No | Page \_\_\_\_\_, ¶ \_\_\_\_\_ |
| **(8) Provisions for the payment of prepetition debt.** | \_\_\_\_\_ Yes<br>\_\_x\_\_ No | Page \_\_\_\_\_, ¶ \_\_\_\_\_ |
| **(9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121.** | \_\_\_\_\_ Yes<br>\_\_X\_\_\_ No | Page \_\_\_\_\_, ¶ \_\_\_\_\_ |
| **(10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor.** | \_\_\_\_\_ Yes<br>\_\_X\_\_\_ No | **Page \_\_\_, ¶ \_\_\_** |
| **(11) Provisions that require or prohibit specific terms in the debtor's plan.** | \_\_\_\_\_ Yes<br>\_\_X\_\_ No | Page \_\_\_\_\_, ¶ \_\_\_\_\_ |
| **(12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default.** | \_\_\_\_\_ Yes<br>\_\_X\_\_\_ No | Page \_\_\_\_\_, ¶ \_\_\_\_\_ |
| **(13) Provisions that waive surcharge under 11 U.S.C. § 506(c).** | \_X\_\_\_ Yes<br>\_\_\_\_\_ No | Page \_\_3\_\_, ¶ \_C\_\_\_ |
| **(14) Provisions that address the rights and obligations of guarantors or co-obligors.** | \_\_\_\_\_ Yes<br>\_\_X\_\_\_ No | Page \_\_\_\_\_, ¶ \_\_\_\_\_ |
| **(15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent.** | \_\_\_\_\_ Yes<br>\_\_X\_\_\_ No | Page \_\_\_\_\_, ¶ \_\_\_\_\_ |
| **(16) Provisions that purport to bind a subsequent trustee.** | \_\_\_\_\_ Yes<br>\_\_\_X\_\_ No | Page \_\_\_\_\_, ¶ \_\_\_\_\_ |
| **(17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees.** | \_\_\_\_\_ Yes<br>\_\_X \_\_\_ No | Page \_\_\_\_\_, ¶ \_\_\_\_\_ |

**COUNSEL FOR DEBTOR-IN-POSSESSION** (*proposed*)

**Dated: 5/12/25**

/s/Alexander J. Berry-Santoro
Alexander J. Berry-Santoro (P81545)
*Maxwell Dunn, PLC*
2937 E. Grand Blvd., Suite 308
Detroit, MI 48202
(248) 246-1166
aberrysantoro@maxwelldunnlaw.com

2

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

In Re:

Calvin1, LLC

Chapter 11 (subch. V)
Case No. 25-44852
Hon. Mark A. Randon

Debtor-In-Possession,

_____/

**DEBTORS' FIRST DAY MOTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR INTERIM AND FINAL ORDERS: (1) AUTHORIZING USE OF CASH COLLATERAL; (2) SCHEDULING FINAL HEARING; AND (3) FOR RELATED RELIEF**

The above-captioned Debtor and Debtor-in-Possession (collectively, the "*Debtor*"), by and through their proposed undersigned counsel, hereby move this Court (the "*Motion*") for entry of orders pursuant to sections 361 and 363 of title 11 of the United States Code (the "*Bankruptcy Code*"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Michigan (the "*Local Rules*"): (1) authorizing the Debtors to use cash collateral pursuant to the budgets attached as <u>Exhibit 1</u> to the Proposed Interim Order attached hereto (collectively, the "*Budgets*"); (2) scheduling a final hearing on the Motion; and (3) for other related relief as necessary. In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §

1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001.

<u>**RELEVANT BACKGROUND**</u>

4.     On May 12, 2025 (the "*Petition Date*"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code, sub-chapter v, commencing the above-actioned case (the "*Case*").

5.     The Debtor continues to operate its business and manage its affairs as debtors-in-possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     A detailed description of the Debtors' business operations, corporate structure, capital structure, and reasons for commencing these cases is set forth in the *Declaration of Waleed Fadheel in Support of First Day Motions and Applications* (the "*Declaration*") and the Debtors incorporate that background herein.

7.     Debtor is a small franchisee of "Happy's Pizza."

8.     Debtor operates out of Dayton, Ohio, but, is a validly formed Domestic Limited Liability Company, which has its principal place of business and location of registered office, in Michigan.

9.     Debtor owned many more franchise locations, throughout Ohio and

4

Michigan, but, has since downsized to only its location at 2804 Salem Ave., Dayton, OH, 45406.

10. Debtor's current operational structure, outside of litigation liability as designated on Schedule(s) E/F, is sufficient to maintain profitable operations.

11. Debtor's only liability which is unable to be paid as it comes due is with respect to litigation pending in state in Dayton, Ohio (the "Obligation").

12. It is not as if Debtor cannot pay the Obligation, just not in a manner where Debtor makes one, lump-sum payment of the entirety - it would ruin the Debtor, which has greater value doing business as presently constituted than being liquidated.

13. In bankruptcy, the Debtors are seeking to maximize outcomes for creditors by, among other things: (a) continuing to service its successful, ongoing relationships with its secured creditors/franchisor; (b) reorganizing its unsecured debt, of which there is relatively little of, but cannot be paid immediately in one lump sum.

14. The foregoing, as it may change and evolve as the Chapter 11 Case plays out, shall be referred to herein as the "Restructuring."

15. The anticipated costs and revenues for each Debtor, January through the end of March 2025 (the "*Budget Period*") are reflected in the Budgets attached as Exhibit 6.

16.    In the aggregate, over the entire three-month Budget Period, the Debtors project to incur an aggregate total of $259,566.30, in expenses.

17.    Approximately $16,563.09, over the Budget Period, is proposed to go to Happy's Pizza Corporate ("*Happy's*"), in the form of adequate protection payments/royalty and advertisement payments subject to the terms of a franchise agreement which is currently "executory."

18.    Approximately $1638[1], over the Budget Period, is proposed to go to the Small Business Administration of the United States of America ("SBA"), in the form of adequate protection payments, due to their all-assets security.

19.    Finally, while the Debtors believe that there is more value to be obtained from continued use of the cash collateral, because the business is appropriately performing at a profit, in the general course of business as was the case pre-petition.

20.    In other words, the purpose of using the Cash Collateral is to maintain the status quo so that Debtor can pay their debts in a manner that allows them to service the Obligation in a manner that is equitable to *both* creditor and Debtor (not merely creditor).

21.    Debtor further believes that this would recognize more value for the

---

[1] The Debtor has a hardship modification, good through July 2025 – at which point, as part of their contribution to the company, insiders Waleed and Ayad Fadheel, will continue to make the full SBA payment, until further notice, and subject to modification or amendment through negotiations with the SBA

6

Creditor than the Debtor believes would occur in a liquidation or shut-down scenario where the collateral is not maintained or repaired, and efforts are not made to thoughtfully maximize value.

## **DISCUSSION**

### ***The Need for Use of Cash Collateral***

22.     The only entities that the Debtor is aware of that asserts a security interest in cash or cash proceeds of other assets of the Debtors is Happy's and the SBA.

23.      The SBA made loans to the Debtor in 2020 and then, again, in late 2021, in the form of Economic Impact Disaster Loans ("*EIDL's*").

24.     The EIDL's were offered in an initial amount, then, when the pandemic drug on for more than a year, a new round of funding was offered in late 2021.

25.     All-in-all, the Debtor was approved for $150,000, in early-to-mid 2020, and then, for another amount which totals $1,096,900.00.

26.     The monthly payment is $5,453.00, this amount is paid, typically by the ownership of the Debtor, Waleed & Ayad Fadheel, and this arrangement is proposed to continue, throughout this case.

27.     The SBA is acknowledged to have a valid, first position, all-assets lien, which was recorded September 5, 2020, with the UCC register in the state of Ohio.

28.     Happy's is a pizza company, which has created a brand to franchise

7

locations that sell, and adhere to, Happy's pizza and franchise standards.

29.    For franchising, Happy's takes a $1,500.00 per month fee, as well as an advertising fee which is roughly $600 (average) per week, but, never more than $1,500.00, per week.

30.    Part of Happy's franchise agreement gives them an all-asset lien.

31.    Happy's is acknowledged to have a valid, second position, all-assets lien, which was recorded June 15, 2022, with the UCC register in the state of Michigan.

32.    Between Happy's and the SBA $1,096,900.00 of lien exists on the collateral of Debtor, which owns roughly $62,237.98 of assets.

33.    Debtor has payroll, processing on a weekly basis, weekly critical vendor payments, but no other cash collateral creditors (e.g., creditors which have interests in the receivables or funds of Debtor).

34.    As explained above, the Debtors have an immediate need to use cash collateral (as that term is defined in section 363 of the Bankruptcy Code, the "*Cash Collateral*") in order to assure the orderly administration of their bankruptcy estate.

35.    Without use of the Cash Collateral in accordance with the Budgets, the Debtors will not be able to pay their employees, operating expenses, and Restructuring costs.

36.    Inability to use the Cash Collateral on an expedited basis will likely

result in an immediate cessation of the ongoing operations of the Debtors' businesses and will cause irreparable harm to the Debtors' estate.

37.    To give just one example, if the Debtor is unable to access his cash collateral, Debtor will be unable to pay payroll, thus, unable to make and deliver pizza/food, and thus, insolvent.

38.    Debtor believe(s) its operations, outside of their litigation liability, has material value.

39.    And the Debtors need to fund payroll, Restructuring, and operational costs in the coming days and weeks.

40.    Put simply, the Debtors cannot continue operations and their Restructuring efforts absent use of the Cash Collateral.

### *Adequate Protection*

41.    Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without the consent of the secured party or court approval.

42.    In the present case, the Debtors have been actively communicating and working with Happy's and the SBA and are hopeful that it will have consented to interim Cash Collateral use by the time of the initial hearing.

43.    Even if the SBA and Happy's does not consent, however, the Debtors respectfully submit that Cash Collateral use should be approved on an interim basis

(up to an amount not to exceed $259,566.30, per quarter, subject to a 10% variance, in the aggregate), and ultimately on a final basis, in accordance with the Budgets.

44.     Section 363(e) of the Bankruptcy Code provides that upon request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. Although "adequate protection" is not defined in the Bankruptcy Code, section 361 of the Bankruptcy Code provides the following three non-exclusive examples of what may constitute adequate protection:

> (1)   requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2)   providing to such entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property; or
>
> (3)   granting such other relief . . . will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property. 11 U.S.C. § 361.

45.     According to the legislative history, a finding of adequate protection is "left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principals." H.R. Rep. No. 595, 95th Cong., 2nd Sess. 339 (1977), reprinted in 1978

10

U.S.C.C.A.N. 5787, 6295. *See MBank Dallas, N.A. v. O'Connor* (*In re O'Connor*), 808 F.2d 1393, 1396-97 (10th Cir. 1987) (stating that adequate protection should be measured on a "case by case basis"); *In re TeVoortwis Dairy, LLC*, 605 B.R. 833, 839 (Bankr. E.D. Mich. 2019) (Opperman, J.) (citing *O'Connor*). The purpose is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See O'Connor*, 808 F.2d at 1396; *see also TerVootwis Dairy*, 605 B.R. at 839 (recognizing same); *In re Planned Sys., Inc.*, 78 B.R. 852, 861-62 (Bankr. S.D. Ohio 1987).

46.    Here, it is proposed that Happy's and the SBA are being adequately protected in multiple ways.

### Continued Operations / Enhancement of Collateral Value

47.    As discussed above, by continuing to operate, the Debtors are maintaining and insuring Happy and the SBA's collateral.

48.    Cutting off access to the cash collateral would render the collateral of Happy and the SBA, mainly fixtures in a restaurant, uninsured due to failure to maintain premium payment, which allows the franchise to reach its highest and best potential value; and, would also potentially render Debtor unable to adequately maintain the collateral in a way which protects the collateral.

49.    The cases are legion that a secured lender is adequately protected in connection with a debtor's proposed use of the lender's cash collateral if the cash

will be used to maintain the lender's collateral, including for the payment of ongoing operating and other expenses necessary to maximize the value of the collateral. *See, e.g.*, *In re Dixie-Shamrock Oil & Gas, Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984) (permitting the use of cash collateral where it was used to "protect, maintain, or enhance the collateral of [the secured lender]."); *see also In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) ("Allowing the Debtor to use [cash collateral] . . . will preserve the base that generates the income stream.").

### Adequate Protection Payments.

50.     As discussed above, the Budget contemplates paying adequate protection, as described above.

51.     This constitutes all post-petition interest payments due under the loans. Again, the adequate protection payments alone could be deemed to adequately protect Citizen's. *See* 11 U.S.C. § 361(1) (specifically enumerating periodic payments as providing adequate protection).

### ***Interim Approval of the Use of Cash Collateral Should Be Granted***

52.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 may not be commenced earlier than fourteen (14) days after the service of such motion.

53.     Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize use of cash collateral on

12

an interim basis to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. *See* Fed. R. Bankr. P. 4001(b); *see also* Local Rule 4001-2(d). Pursuant to Bankruptcy Rule 4001(b), the Debtors request that the Court conduct a preliminary expedited hearing as soon as practicable to enter the Proposed Interim Order authorizing the Debtors to use Cash Collateral in an aggregate amount not to exceed the amounts set forth in the Budget attached to the Proposed Interim Order (subject to a 10% variance as set forth in the Proposed Interim Order) pending the final hearing.

54. The ability of the Debtor to finance, through the use of Cash Collateral, their ongoing operations as they pursue the Restructuring for the benefit of all creditors is in the best interests of the Debtor, all their creditors, and the estate. The relief requested is necessary in order to avoid immediate and irreparable harm and prejudice to the estates and to all parties-in-interest in these Bankruptcy Cases.

55. The Debtors have an urgent and immediate need to use Cash Collateral to continue to their business operations while they pursue the Restructuring. All of the Debtor's businesses will be immediately and irreparably harmed without authorization from the Court to use Cash Collateral, as requested, on an interim basis pending the final hearing.

### ***Request for a Final Hearing***

56. Finally, pursuant to Bankruptcy Rule 4001(c)(2), the Debtor

respectfully requests that this Court set a date for the final hearing. The Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for filing objections, if any, by first class mail upon the United States Trustee, the Debtors' twenty (20) largest creditors, and any party having filed a request to receive service in the Chapter 11 Cases. The Debtors request that the Court consider such notice of the final hearing to be sufficient notice under Rule 4001 of the Bankruptcy Rules.

## **NOTICE**

57.     The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the United States Trustee's Office for the Eastern District of Michigan; (b) SBA & Happy's; (c) the holders of the twenty (20) largest unsecured claims against the Debtors; (d) and any party that has formally appeared and requested notice pursuant to Bankruptcy Rule 2002.

58.     In light of the nature of the relief requested, the Debtors submit that no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that this Court (a) conduct an emergency hearing on this Motion; (b) enter an Interim Order substantially in the form submitted herewith; (c) schedule a final hearing on the relief requested herein; and (d) grant such further relief as may be equitable and just.

Respectfully submitted,

14

DATED: 5/12/25

/s/Alexander      J.      Berry-Santoro
Alexander J. Berry-Santoro (P81545)

Maxwell Dunn, PLC
*Proposed Atty, Debtor-in-Possession*
2937 E. Grand Blvd.
Detroit, MI 48202
248-246-1166
aberrysantoro@maxwelldunnlaw.com

15

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT**

In Re:

      Calvin1, LLC                                   Chapter 11 (subch. V)
                                                   Case No. 25-44852
               Debtor-In-Possession,            Hon. Mark A. Randon

_____/

**INTERIM ORDER ON DEBTORS' FIRST DAY MOTION PURSUANT TO
SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 4001 FOR INTERIM AND FINAL ORDERS: (1)
AUTHORIZING USE OF CASH COLLATERAL; (2) SCHEDULING FINAL
HEARING; AND (3) FOR RELATED RELIEF**

This matter came before the Court upon the Motion of Calvin1, LLC. (the "Debtor") for

Entry of Order Authorizing Use of Cash Collateral (the "Motion"). Upon review of the Motion,

IT IS ORDERED THAT:

1. The Motion is granted on an interim basis on the conditions set forth in this Order.

2. Happy's Pizza Corporate ("*Happy's*") has financed purchase of fixtures and other restaurant equipment, which has resulted in an all-assets lien.

3. Small Business Administration of the United States of America ("*SBA*") has financed working capital for Debtor, during the pandemic, resulting in an all-assets lien.

4. SBA and Happy's (collectively, the "*Cash Collateral Creditors*", the liens, collectively, the "*All-Asset Liens*") have valid and perfected, non-avoidable first and second priority lien on the collateral of the Debtor, as well as the proceeds, products, offspring and/or profits of Debtor in Possession, by virtue of the All-Asset Liens – this language does not and shall not impair third parties claims against said liens.

5. The All-Assets Liens on the accounts of Debtor (the "*Collateral*") constitute "cash collateral" as defined by 11 U.S.C. § 363(a).

16

6. The Debtor intends to continue operation, pursuant to its projections and historical data, it has been operating profitably, but needs use of the Collateral to operate and, thus, reorganize ("Operation").

7. The anticipated operation will generate cash and/or other cash equivalents, which constitute "cash collateral" as defined by 11 U.S.C. § 363(a), to which the Cash Collateral Creditor's security interests attach, in accordance with 11 U.S.C. § 552(b)(1).

8. The Debtor wishes to continue Operation, using the proceeds from Operation, less expenses of adequate protection, and in the operating budged appended to the Motion (subject to a 10% variance) (the "*Net Profits*").

9. The Debtor also wishes to use for its ordinary business operations the proceeds from its pre-petition accounts receivables (the "**Pre-Petition Receivables**") in which the Cash Collateral Creditors plausibly have a security interest.

10. Pursuant to the Cash Collateral Creditors' consent, Debtor may use the Collateral, Net Profits, and Pre-Petition Receivables on an interim basis, until the earlier of (a) the Final Hearing referenced herein, or (b) a Termination Event (subsequently defined), but only on the following terms and conditions:

A. Use of Cash. Debtor may use the Collateral; but Debtor may not sell the Collateral.

B. Permitted Uses of Cash Collateral. The Debtor is authorized to use the Net Proceeds solely for the purposes set forth in the Budget to the Motion as Exhibit 6, and incorporated herein by reference. provided, however, that the Debtor may exceed on a monthly basis the amount set forth in each category of disbursements set forth in the Budget by ten percent (10%) (estimated usage per quarter $259,566.30, per quarter, subject to a 10% variance), roughly $43,261.05 should be used (maximally) during the interim period.

17

C. Waiver of Surcharge. The Debtor shall be deemed to have irrevocably waived any right under 11 U.S.C. § 506(c) to surcharge any of the Collateral or their respective proceeds.

D. Waiver of Rule 7001(2) Claims. The Debtor and shall be deemed to have irrevocably waived any right to challenge the validity, enforceability, or priority of any of the Cash Collateral Creditors' liens.

E. Insurance. The Debtor shall keep their operation insured, under the same terms and conditions set forth in its respective pre-petition contracts with the Cash Collateral Creditors and shall provide proof of same to the satisfaction of the Cash Collateral Creditors.

F. Inspections. Cash Collateral Creditors shall be permitted, at all reasonable times during normal business hours, to inspect the pre- and post-petition Collateral, including all documents related to the Collateral, at the Debtor's business premises. Debtor shall maintain all documents related to the Collateral, including all sale documents, at its principal place of business and in accordance with its pre-petition agreements with the Cash Collateral Creditors. Inspections shall be limited to no more frequent than twice per calendar month, unless there is a default under the terms set forth herein, in which event inspections may be unlimited.

G. Termination Event. Notwithstanding anything herein or in the applicable pre-petition agreements, Debtor's rights to use any cash collateral shall immediately and irrevocably terminate from and after the date of Debtor's receipt of written notice sent by certified mail, return receipt requested, by the Cash Collateral Creditors that a Termination Event has

occurred and is continuing (with a copy to the U.S. Trustee and Debtor's Counsel and any creditor's committee subsequently appointed), unless cured within seven (7) days from receipt of the notice.  For purposes of this Order, the non-compliance of Debtor with any of terms herein, shall constitute a "Termination Event."

     i) Upon non-compliance and failure to cure, the Court shall enter an Order dismissing the Debtor's chapter 11 case, or, appointing a chapter 11 trustee.

         a. This Order is without prejudice to the rights of the Cash Collateral Creditors to seek a modification of this Order, including decreased use of Cash Collateral and additional adequate protection, after notice and hearing or relief from the stay imposed by 11 U.S.C. § 362 or the abandonment of any collateral from the Debtor's estate.

L.    The automatic stay is hereby modified to the extent necessary to implement any provisions of this Order.

M.    A final hearing on this matter is scheduled by separate notice on _____ _____, 202__ at _m, in a manner consistent with said notice.

N.    The deadline to file an objection to the Order is 14 days from the entry of the order, except that an official committee may file objections within 14 days after it is served with the entered order; if an objection is timely filed, the final hearing will be held; and if no objection is timely filed, the interim or preliminary order may become a final Order.

O.    Debtor must, within 24 hours of its entry, serve a copy of the motion with its attachments and the entered order on all parties who are required to be served under F.R.Bankr.P. 4001(d)

## EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION - DETROIT**

In Re:

    Calvin1, LLC                        Chapter 11 (subch. V)
                                       Case No. 25-44852
           Debtor-In-Possession,       Hon. Mark A. Randon

_____/

**ORDER SETTING HEARING ON DEBTOR'S**
**FIRST DAY MOTIONS**

Upon the filing of the above-captioned motion,

    IT IS HEREBY ORDERED THAT, a hearing on the above-captioned motion

shall be held on _____ _____, 202__ at __m., in the Courtroom of the

Honorable Mark A. Randon, 211 W. Fort Street, Courtroom 1825, Detroit, MI

48226.

    IT IS FURTHER ORDERED THAT Debtor shall serve a copy of this Order

upon its secured claimants, counsel of record, the entities on the list of the 20

largest creditors filed with the Court via email to the extent known (and regular

mail), and the office of the United States Trustee immediately by email.

EXHIBIT 2

In re    CALVIN 1 LLC                                    Case No.    25-44852
                              Debtor(s)                 Chapter     11

# BUSINESS INCOME AND EXPENSES

<u>FINANCIAL REVIEW OF THE DEBTOR'S BUSINESS</u>  (NOTE: <u>This is a compilation of information contained in bank statements, and other historical financial data, it is presumed that historical income is the best judge of future income in the Debtor's business; these numbers are not creatd by counsel, and are merely being compiled for use of first day financials - more fullsome financials may be provided pre-final hearing on cash collateral motion, moreover, processing of all 2024 tax information is being completed by CPA, this should not be relied upon for tax purposes and does not include certain tax deductions (depreciation, amortization, etc.) Please seek a CPA for advice and/or counsel)</u>

PART A - AVERAGE MONTHLYGROSS BUSINESS INCOMEBASED ON Jan-Mar 2025:

    1. Average Monthly Gross Income For  Jan-Mar, 2025, Prior to Filing:          $          91,174.10

PART B - ESTIMATED FUTURE MONTHLY EXPENSE (These expenses are compiled based on the last two years of bank statement, averaged, and compared as against profit and loss from 21' through 23' taxes, expenses which are only tax deductible, e.g., depreciation and other deductions, are not included):

| | |
|---|---|
| Sales Taxes | $165.68 |
| Compensation of Officers (outside of payroll, Walleed is on payroll) | $1175.10 |
| Payroll - Employees | $31,488.81 |
| Repairs & Maintenance | $1621.10 |
| Rent | $2100 |
| Insurance General | $1554.34 |
| Processing Fees – Payroll | $627.08 |
| Alarm & Security | $92.95 |
| Software | $462.67 |
| Advertising(Part of AP pmt) | $4021.03 |
| Franchise Fees (part of AP pmt) | $1500 |
| Bank Charges | $736.75 |
| Credit Card Fees | $2237.88 |
| Supplies (e.g. food, soda, raw inventory) | $28570.16 |
| Fees - 3rd Party Commissions (e.g., tips) | $2447.08 |
| Pest Control | $43.08 |
| Postage & Shipping | $378.02 |
| Refuse Collection | $121.55 |
| Internet Expense | $704.69 |
| Utilities | $258.44 |
| Telephone | $833.50 |
| Laundry & cleaning | $271.02 |
| Driver Runs | $1221.41 |
| Legal & Accounting | $1100.22 |
| Licenses Fees, Permits | $351.85 |
| Taxes: FICA | $1421.86 |
| Taxes: Federal Unemployment | $484.78 |
| Taxes: State Unemployment | $332.54 |
| Auto expense | $ 604.60 |

22. Total Monthly Expenses (Add items 3-21)    $ _____ 86,522.10

PART D - ESTIMATED AVERAGE NET MONTHLY INCOME:

23. AVERAGE NET MONTHLY INCOME (Subtract item 22 from item 2)    $ _____ 4652.00

24. SBA AP pmt. to be paid by insiders, SBA pmt. to be $546 through 7/27, then $5453.00    $1000 per mo to trustee

EXHIBIT 6