UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

**In Re:**

Calvin1, LLC

Chapter 11 (subch. V)
Case No. 25-44852

Debtor-In-Possession,

Hon. Mark A. Randon

_____/

# INTERIM ORDER ON DEBTORS' FIRST DAY MOTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR INTERIM AND FINAL ORDERS: (1) AUTHORIZING USE OF CASH COLLATERAL; (2) SCHEDULING FINAL HEARING; AND (3) FOR RELATED RELIEF

~~This matter came before the Court upon the Motion of Calvin1, LLC (the "Debtor") for~~ THIS MATTER is before the Court upon the chapter 11 debtor and debtor-in-possession Calvin1, LLC's (the "Debtor") *Motion for* Entry of Order Authorizing Use of Cash Collateral [ECF No. ___] (the "Motion")~~; the Motion was appropriately served; a Hearing was held, May 19, 2025; and the Court, noting that jurisdiction was appropriately recited in the Motion, and that, pursuant to the appropriate "core proceeding" predicates being recited in the Motion, that the~~ pursuant to Title 11 of the United States Code (the "Bankruptcy Code") sections 105, 363(c)(2)(B), 363(e), and 507(b), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-2 of the United States Bankruptcy Court for the Eastern District of Michigan Local Rules (the "Local Bankruptcy Rules") and an interim hearing that was held before the court on May 15, 2025 at 11:00

a.m. (the "Interim Hearing"). As stated in the Debtor's certificate of service [ECF No. 45], the Debtor served notice of the Motion together with notice of the Interim Hearing on (1) the United States Trustee, (2) the Subchapter V Trustee (3) Happy's Pizza Corporate ("Happy's"), the Small Business Administration of the United States of America ("SBA"), and all other secured creditors, (4) the Debtor's twenty (20) largest unsecured creditors, and (5) any parties who may have filed a notice of appearance. The Court considered the Motion and the record on the Motion at the Interim Hearing, and after due deliberation and for reasons stated on the record, good and sufficient cause exists for entry of the within order, it is hereby found:

A. The Debtor filed its voluntary petition under Chapter 11, Subchapter V of the Bankruptcy Code on May 12, 2025.

B. This court has jurisdiction over the relief sought in the Motion and granted in this Order pursuant to 28 U.S.C. . §1334 and this matter is a "core proceeding" pursuant to 28 U.S.C . §157(b).

C. The Motion is appropriately before the Court ~~through 11 USC § 363(c)~~ pursuant to sections 361. 363 and Bankruptcy Rule 4001.

D. The procedures set forth in this Order, constitute sufficient "notice and hearing" under Section 102 and 363(c) of the Bankruptcy Code, Bankruptcy Rule 2002, 4001, 6004 and 9006. This Order is being entered on

an interim basis pursuant to Bankruptcy Rule 4001 and is expressly subject to the rights of parties in interest to object as specifically provided in paragraph 11 below.

E. The Debtor is indebted to the SBA in the approximate amount of $1,096,900.00 in connection with an Economic Injury Disaster Loan ("EIDL") for amounts the Debtor borrowed during the Covid-19 pandemic;

~~Upon review of the Motion, The Court Notes the Following:~~

~~1. The Motion is granted on an interim basis on the conditions set forth in this Order.~~

F. The Debtor is indebted to Happy's in an unknown amount in connection with the terms of the Happy's franchise agreement between the Debtor and Happy's, as amended from time to time;

~~2. Happy's Pizza Corporate ("*Happy's*") has financed purchase of fixtures and other restaurant equipment, which has resulted in an all-assets lien.~~

~~3. Small Business Administration of the United States of America ("*SBA*") has financed working capital for Debtor, during the pandemic, resulting in an all-assets lien.~~

~~4~~G. The Debtor ~~concedes~~has conceded that the SBA and Happy's (collectively, the "Cash Collateral Creditors", ~~the liens, collectively, the "*All-Asset Liens*")~~ have valid and perfected, non-avoidable first and second priority ~~lien~~liens respectively on the collateral of the Debtor, as well as the proceeds, products, offspring and/or profits of Debtor in Possession~~, by virtue of the All-Asset Liens – this language does not and shall not impair third parties claims against said liens.~~ (the "All Assets Liens");

H.  The estimated value of the collateral subject to the All Assets Liens is approximately $62,237.98.

~~5~~I.  The ~~All Assets Liens on the~~Debtor's deposit accounts ~~of Debtor~~, cash, cash equivalents and proceeds (the "Collateral") constitute "cash collateral" as defined by 11 U.S.C. § 363(a).

~~6.  The Debtor intends to continue operation, pursuant to its projections and historical data, it has been operating profitably, but needs use of the Collateral to operate and, thus, reorganize ("Operation").~~

J.  Debtor has an immediate need to use cash collateral in order for Debtor to continue to operate its business, and preserve its goodwill and going concern value. Moreover, it is necessary for Debtor to use cash collateral to enable it to pay normal operating expenses (including, without limitation, wages, insurance premiums, utilities, rent and taxes) and to purchase inventory. Without the Debtor's ability to continue operations, which requires the use of cash collateral, the Debtor represents that it will suffer immediate and irreparable harm to its business operations;

~~7~~K.  The ~~anticipated operation~~Debtor's operations will generate cash and/or other cash equivalents, which constitute "cash collateral" as defined by 11 U.S.C. § 363(a), to which the Cash Collateral Creditor's security interests attach, in accordance with 11 U.S.C. § 552(b)(1)~~.~~;

~~8.  The Debtor wishes to continue Operation, using the proceeds from Operation, less~~

~~expenses of adequate protection, and in the operating budged appended to the Motion (subject to a 10% variance) (the "*Net Profits*").~~

~~9~~L. ~~The~~ Debtor ~~also wishes to use for its ordinary business operations the proceeds from its pre-petition accounts receivables (the "*Pre-Petition Receivables*") in which the Cash Collateral Creditors plausibly have a security interest.~~ requires interim use of cash collateral from the date of entry of this Order through _____, 2025 (the "Interim Period") in the amount of $43,261.05 with a variance of up to 10 percent in order to continue its operations and to prevent immediate and irreparable harm.

~~10. Pursuant to the Cash Collateral Creditors' consent, that is memorialized by lack of objection and this Order, Debtor may use the Collateral, Net Profits, and Pre-Petition Receivables on an interim basis, until the earlier of (a) the Final Hearing referenced herein, or (b) a Termination Event (subsequently defined), but only on the following terms and conditions:~~

NOW~~,~~ THEREFORE, ~~THE FOLLOWING~~ IT IS HEREBY ORDERED THAT:

A. ~~Use of Cash. Debtor may use the Collateral; but Debtor may not sell the Collateral.~~

    1. The Motion is granted and Debtor is authorized, on an interim basis through the Interim Period to use cash collateral and, in the event of no objections to this Order, on a final basis through August 11, 2025 or such longer period as may be granted by further order of this Court, the Debtor's authority to use cash collateral is subject to the terms of this Order;

2. The Debtor may use cash collateral to fund payment of expenses as and when budgeted, provided the aggregate cumulative amount of expenditures during the Interim Period does not exceed $43,261.05 with a variance of up to 10 percent and on a final basis, the monthly amount of such expenses as indicated in the budget filed on May 13, 2025 as Exhibit 2 to the Motion (the "Budget") with a variance of up to 10 percent;

3. As adequate protection for the use of cash collateral, the following is granted to Cash Collateral Creditors:

    a. Replacement liens on postpetition assets of the same type and priority as existed prepetition, to the extent of any diminution in value of the Cash Collateral Creditors interests in the prepetition collateral;

B. ~~Permitted Uses of Cash Collateral. The Debtor is authorized to use the Net Proceeds solely for the purposes set forth in the Budget to the Motion as Exhibit 6 and incorporated herein by reference.~~

C. ~~However, the Debtor may exceed on a monthly basis, the amount set forth in each category of disbursements set forth in the Budget by ten percent (10%) (estimated usage per quarter $259,566.30, per quarter, subject to a 10% variance), roughly $43,261.05 should be used (maximally) during the interim period, to avoid irreparable harm.~~

    b. Continued payment to Happy's of franchise fees in the amount of $1,500 per month and continued maintenance of all other requirements of the franchise agreement;

c. Adequate protection payments to the SBA in the amount of $546 per month when the Debtor's monthly payments would become due to the SBA under the terms of the EIDL and $5,453 monthly commencing after July 27, 2025 which may, to the extent necessary for the Debtor's continued operations, be paid by the insiders of the Debtor;

D4. <u>Insurance</u>. The Debtor shall keep ~~their~~its operation insured, under the same terms and conditions set forth in its respective pre-petition ~~contracts~~agreements with the Cash Collateral Creditors and shall provide proof of same to the satisfaction of the Cash Collateral Creditors.

E5. <u>Inspections</u>. The Cash Collateral Creditors shall be permitted, at all reasonable times during normal business hours, to inspect the pre- and post-petition Collateral, including all documents related to the Collateral, at the Debtor's business premises. Debtor shall maintain all documents related to the Collateral, including all sale documents, at its principal place of business and in accordance with its pre-petition agreements with the Cash Collateral Creditors. Inspections shall be limited to no more frequent than twice per calendar month, unless there is a default under the terms set forth herein, in which event inspections may be unlimited.

~~F. Termination Event. Notwithstanding anything herein or in the applicable pre-petition~~

~~agreements, Debtor's rights to use any cash collateral shall immediately and irrevocably terminate from and after the date of Debtor's receipt of written notice sent by certified mail, return receipt requested, by the Cash Collateral Creditors that a Termination Event has occurred and is continuing (with a copy to the U.S. Trustee and Debtor's Counsel and any creditor's committee subsequently appointed), unless cured within seven (7) days from receipt of the notice. For purposes of this Order, the non-compliance of Debtor with any of terms herein, shall constitute a "Termination Event.~~

~~G. Default Procedure. Upon non-compliance and failure to cure, any party in interest who has previously sent notice of an event of default, and said default has not been cured within seven (7) days of receipt, is entitled to submit an affidavit of default attesting to the same.~~

~~H~~6. ~~Remedy~~<u>Default</u>. Upon ~~the filing of said~~<u>Debtor's non-compliance with any terms or conditions of this Order and the Debtor's failure within 14 days of the date of notice of any party in interest to cure any such default, such party in interest may file an</u> affidavit of default~~,~~ <u>attesting to the Debtor's default upon which</u> the Court shall enter an Order dismissing the Debtor's chapter 11 case, or, appointing a chapter 11 trustee.

~~I~~7. Reservation. This Order is without prejudice to the rights of the <u>Debtor or</u> Cash Collateral Creditors to seek a modification of this Order, including ~~decreased use~~<u>the amount</u> of Cash Collateral <u>authorized to be used</u> and additional adequate protection, after notice and hearing or relief from the stay imposed by 11 U.S.C. § 362 or the abandonment of any collateral from the Debtor's estate. <u>Further this Order is without prejudice to the rights of any party in interest, to object to the</u>

validity, priority or extent of the liens of the Cash Collateral Creditors in accordance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules;

J. ~~The automatic stay is hereby modified to the extent necessary to implement any provisions of this Order.~~

~~K~~8. A final hearing on this matter is scheduled on _____, 202___ at _m~~,~~ (the "Final Hearing") in a manner consistent with the Court's protocol for Chapter 11 hearings.

L. ~~The deadline to file an objection to the Order is 14 days from the entry of the order, except that an official committee may file objections within 14 days after it is served with the entered order; if an objection is timely filed, the final hearing will be held; and if no objection is timely filed, the interim or preliminary order may become a final Order.~~

~~M~~9. Debtor ~~must, within 24 hours of its entry,~~ shall serve a copy of ~~the motion with its attachments and the entered order on all parties who are required to be served under F.R.Bankr.P. 4001(d)~~ this Order within 24 hours after entry of this Order pursuant to Local Rule 4001-2.

10. Objections to this Order must timely filed and served on (i) counsel for Debtor, Alexander Barry-Santoro _____, (ii) the Cash Collateral Creditors; and (iii) Subchapter V Trustee, Kimberly Ross Clayson, 27777 Franklin Rd. Suite 2500, Southfield, MI 48034.

11. If an objection is filed, the Final Hearing shall be held telephonically. At least

five minutes before the scheduled time for hearing, counsel and interested parties should call (202) 503-1666 and use Conference ID 231 911 059#. Landline connections are preferred, but cell phone or other telephone services are allowed. Counsel and parties should place their phone on mute and wait until their case is called before unmuting their phone and participating. Under no circumstances should a phone be placed "on hold" during any part of the call.

12. If no objections are filed, this Order shall become a final Order.

| Summary report: Litera Compare for Word 11.8.0.56 Document comparison done on 5/14/2025 4:57:30 PM ||
|---|---|
| **Style name:** TaftStandard ||
| **Intelligent Table Comparison:** Active ||
| **Original DMS:** iw://taft-mobility.imanage.work/ACTIVE/172892819/1 ||
| **Modified DMS:** iw://taft-mobility.imanage.work/ACTIVE/172892819/2 ||
| **Changes:** ||
| Add | 59 |
| Delete | 57 |
| Move From | 3 |
| Move To | 3 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 122 |